FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:17-cv- 509 -ORL-41- DCI

MALAK M. HAMMAD,
    Plaintiff,

vs.

PNC BANK, N. A.,
a Delaware corporation,

    Defendant.
_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff MALAK M. HAMMAD (hereinafter referred to as "MALAK HAMMAD" or "Plaintiff"), by counsel, sues Defendant PNC BANK, N. A., (hereinafter referred to as "PNC BANK" or "Defendant"), demands trial by jury, and states:

### COMMON ALLEGATIONS

1. Plaintiff sues Defendant pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.A. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Florida Civil Rights Act, 29 U.S.C. §623(a), of the Age Discrimination in Employment Act of 1967 ("ADEA"), and other laws providing a cause of action, and seeks damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed, discriminated against, retaliated against, severely humiliated, mentally anguished, and emotionally and physically distressed by Defendant during her employment with Defendant.

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), 29 U.S.C. §626(c), and 28 U.S.C. §1331 and 1343. The Court has supplemental jurisdiction over the claims of

Plaintiff brought under state law pursuant to 28 U.S.C.A. § 1367.

3. Venue is proper in this district, pursuant to 28 U.S.C. §1391(b), based upon Defendant having a principal place of business within this Federal District.

4. Defendant is engaged in an industry affecting commerce, and has 15 or more employees on the payroll.

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission (EEOC).

6. Plaintiff received a Notice of Right to Sue from the EEOC, with respect to the herein charges of discrimination. A copy of the Notice is attached hereto as **Exhibit "A"** and incorporated herein by reference.

7. This action is being commenced within ninety (90) days of Plaintiff's receipt of her EEOC Right to Sue.

8. At all times material hereto, Plaintiff was a resident of Brevard County, Florida.

9. At all times material hereto, Defendant was a foreign business corporation doing business in the State of Florida, with places of business in Brevard County, Florida.

10. At all times relevant hereto, Plaintiff was an exemplary employee.

11. Throughout her tenure with Defendant, Plaintiff always received compliments for her work performance, and always got along well with all of her co-workers.

12. During Plaintiff's employment, Plaintiff was discriminated against by Defendant due to her female gender through sexual harassment, retaliation, and due to her age.

13. If Plaintiff were to quit, she would have difficulty finding other employment similar to her employment with Defendant.

14. Defendant regularly subjected MALAK HAMMAD to an overall hostile work environment.

2

15. Plaintiff was extremely upset and offended by Defendant's actions and inaction and never expected to be the target of such repulsive behavior at an organization of Defendant's size and sophistication.

16. MALAK HAMMAD complained to various supervisory personnel about the discrimination she was experiencing including going so far as to emailing the company president, which went unresponded to, after seeing a video in which he claimed the bank would never tolerate discriminatory behavior.

17. In spite of her complaints, Defendant continued the unlawful sexual harassment of Plaintiff, and escalated its severity.

18. Plaintiff felt violated, humiliated, and intimidated by the illegal and wrongful actions of Defendant and felt offended and humiliated by the blatantly unlawful and retaliatory treatment.

19. Defendant's actions and conduct was intentional and intended to harm the Plaintiff.

20. As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

21. As a result of the Defendant's discriminatory and intolerable treatment of Plaintiff, Plaintiff has suffered severe emotional distress and physical ailments.

22. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of salary raises, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

23. Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

24. MALAK HAMMAD was offered a position on or about May 2008 after an hour and a half interview on the phone with Defendant (previously National City Bank) and began her position on or about July 5, 2008.

25. MALAK HAMMAD was hired as branch manager for the Cocoa, Florida location and was asked to move to the Baytree/Viera branch to accompany the new Regional Manager for the Space Coast Region, Melissa Mickle. Melissa Mickle stated that she liked MALAK HAMMAD's style of management and the contribution that she had already demonstrated in a short time at the Cocoa branch location.

26. On October 20, 2008, MALAK HAMMAD and Melissa Mickle started the same day at the Baytree branch.

27. There was an email sent out to all other branch managers within the region on behalf of Melissa Mickle naming MALAK HAMMAD as Melissa Mickle's back up should anyone not be able to reach Melissa Mickle.

28. MALAK HAMMAD enjoyed working with Melissa Mickle.

29. In or around 2010, MALAK HAMMAD met Marcus Harley, a higher ranked employee of Defendant, while attending a marketing meeting with Melissa Mickle, her regional manager.

30. Marcus Harley, in 2010, held a position of work place banking and his focus was to attract outside companies to allow him and others to go and present Defendant in hope to acquire accounts.

31. Marcus Harley gave MALAK HAMMAD a physically aggressive and unwelcomed firm embrace and kiss on the cheek at their first meeting.

32. The aforementioned physically aggressive and unwelcomed embrace and kiss on the cheek startled MALAK HAMMAD as they exchanged business cards.

33. Without a legitimate business motive, Marcus Harley called MALAK HAMMAD several times to say 'hello' and was 'flirty.'

34. Marcus Harley also came to MALAK HAMMAD's bank branch, which was a big surprise to her as his position within the bank did not cover her area.

35. Melissa Mickle was also available in the branch during the first meeting between Marcus Harley and MALAK HAMMAD, however, Melissa Mickle appeared very angry that Marcus Harley was there.

36. Marcus Harley asked MALAK HAMMAD out on a date and stated that he would take her to dinner that same evening.

37. MALAK HAMMAD had zero interest in Marcus Harley and said no to his date offer.

38. Melissa Mickle then called MALAK HAMMAD into her office and demanded to know why he was there and MALAK HAMMAD explained that he stated that he was in the area and just wanted to say hello.

39. Melissa Mickle became angry with and accusatory towards Marcus Harley.

40. Melissa Mickle did not believe MALAK HAMMAD and asked her again stating that Marcus Harley works at least two to two and a half hours away from MALAK HAMMAD's PNC Bank location.

41. At that point, MALAK HAMMAD told Melissa Mickle what Marcus Harley's interest was and Melissa Mickle asked MALAK HAMMAD if he shared that he was married with four children.

42. MALAK HAMMAD had no idea Marcus Harley was married with children nor did she think it mattered because she told Marcus Harley unequivocally 'NO' to his date offer.

43. Essentially, MALAK HAMMAD had a fine relationship with her co-workers prior to the harassment.

44. Neither Melisa Mickle nor any other Defendant employee of Defendant took any action against Marcus Harley for his inappropriate sexually motivated actions towards MALAK HAMMAD.

45. Jason Bristol, Ashley Hammond, Roxanne Juimez, Kathleen Hudacek, and Crystal Nelson were employees of Defendant and co-workers with MALAK HAMMAD and were aware of Marcus Harley's actions and this negatively affected MALAK HAMMAD.

46. MALAK HAMMAD was one of the favorite managers at PNC Bank and very close to the majority of employees prior to the harassment.

47. Defendant's employees called MALAK HAMMAD whenever they needed anything or had any questions and MALAK HAMMAD truly felt it was genuine and everyone got along.

48. There were some managers such as Gloria Sprankle and Craig Smith that MALAK HAMMAD spoke to daily and others she was in touch with regularly.

49. In March of 2013, Melissa Mickle got a promotion to Marketing Manager of Florida and within a few months the announcement came that as of March 2013 Marcus Harley was going to be the new Space Coast Regional Manager.

50. This news was shocking to MALAK HAMMAD because her entire team plus another branch manager, Gloria Sprankle, was aware of Marcus Harley asking her out on a date.

51. PNC Bank Manager Gloria Sprankle's first encounter with Marcus Harley was in February 2013 when Marcus Harley was introduced to the PNC Bank team.

52. Within the first hour of the meeting, Marcus Harley told the PNC Bank team that he was interviewed by Kevin Sloan and had told Kevin Sloan that "He was an HR nightmare."

53. The next encounter of Marcus Haley was at another marketing meeting and MALAK HAMMAD was driving to Port St. Lucie with her friend, Gloria Sprankle, who was managing the Merritt Island Branch at the time.

54. Gloria Sprankle had known that Marcus Harley had asked MALAK HAMMAD out on a date.

55. Gloria Sprankle was on the phone with another branch manager, Marlena Johnson, and Gloria Sprankle proceeded to tell Ms. Johnson that Marcus Harley was 'sweet on MALAK HAMMAD' before she was able to stop the conversation.

56. At that point, MALAK HAMMAD knew gossip was going to spread very quickly and asked Gloria Sprankle to not say anything.

57. Gloria Sprankle seemed okay with not saying anything and stated that she would not.

58. At the marketing meeting, Marcus Harley was very much acting as usual, very friendly and gave MALAK HAMMAD another physically aggressive and unwelcomed firm embrace, looked her up and down in a lustful fashion, and stated, "Humm I need to be good" to which MALAK HAMMAD replied. "YES, you do."

59. Within a very short time, gossip and rumors about MALAK HAMMAD and Marcus Harley were very much alive and at that time MALAK HAMMAD believed she was treated as an enemy of Defendant.

60. MALAK HAMMAD was ignored by Defendant's employees and no calls came into her from anyone.

61. Marcus Harley campaigned to make it more difficult for MALAK HAMMAD to enjoy a moment of peace at work and made it clear to other PNC Bank managers that she should not be trusted nor should they interact with her in any way as MALAK HAMMAD was absolutely not to be trusted.

62. It is widely known to the public throughout Brevard County, Florida, including PNC Bank Human Resources and PNC Bank employees, that MALAK HAMMAD has been a victim of and survived an abusive marriage and would be more sensitive to abusive behavior.

63. Marcus Harley was well aware that defendant's employees knew that he had asked MALAK HAMMAD out on a date.

64. The Defendant's employees all listened to Marcus Harley's directives to not trust MALAK HAMMAD and now MALAK HAMMAD was treated by the Defendant's employees as if she were a disease.

65. No one from Defendant PNC BANK would talk to MALAK HAMMAD, call her or ask her out to lunch with them.

66. Marcus Harley made it his mission to make MALAK HAMMAD look bad to all Defendant's employees and all this was reported to his Manager, Melissa Mickle, and to Human Resources every step of the way yet nothing was ever done.

67. With every complaint, MALAK HAMMAD was told that there was no findings of sexual harassment from Human Resources and when things got even worse, Melissa Mickle and Julie Cart of Human Resources came to meet with MALAK HAMMAD and Marcus Harley in person.

68. MALAK HAMMAD was told the meeting had to be at a secret place where no one was to see them so they made arrangements to meet at the Brevard Zoo in a freezing room called 'the cave' which was very embarrassing for MALAK HAMMAD, because she knew the Brevard Zoo employees, including Keith Winston who led them to the Brevard Zoo room known as 'the cave.'

69. Marcus Harley denied all wrong doing at the Brevard Zoo meeting at 'the cave' and again Marcus Harley and MALAK HAMMAD were both told not to put anything in writing and that if they had an issue they needed to pick up the phone and call.

70. None of MALAK HAMMAD's emails were responded to and, in fact, when she asked a Human Resources person, Brandy Rufner, to please reply to her email, Ms. Rufner stated that 'she was not permitted to respond in writing.'

71. No matter what Marcus Harley did or said to MALAK HAMMAD or her team, it carried no consequences for Marcus Harley.

72. Marcus Harley became angrier each time MALAK HAMMAD complained and all of MALAK HAMMAD'S prior achievements, as well as excellent reviews, became a joke to him as MALAK HAMMAD was made to feel she was not meeting his expectations.

73. MALAK HAMMAD's compensation incentives become nonexistent.

74. Marcus Harley told all branch managers that the Human Resources hot line had been called several times on him, however, he did not care and, in fact, that is what makes him a better manager.

75. Marcus Harley stated he was not here to make friends as he has many.

76. Marcus Harley made it clear to others, as MALAK HAMMAD was told by Leslie Fowler, a branch manager, that it was MALAK HAMMAD calling on Marcus Harley.

77. Marcus Harley therefore asked Leslie Fowler not to trust or share anything with MALAK HAMMAD.

78. Leslie Fowler stated that she was not the only manager that was told this.

79. MALAK HAMMAD is a community leader in Brevard County, Florida.

80. Community leaders provide a very important marketing benefit to their employers.

81. Marcus Harley took every opportunity away from MALAK HAMMAD, including having her resign from the Devereaux Board, the Indialantic Rotary, and a board seat at Brevard Zoo, even though it was negotiated with Marcus Harley.

82. Marcus Harley even took MALAK HAMMAD's place for himself at Lead Brevard which is a community school supported by the Chamber of Commerce and difficult to be selected for.

83. Although it was announced that MALAK HAMMAD was going to be in the Lead Brevard class, Marcus Harley said to MALAK HAMMAD that the homework was difficult and that

even he had to read it twice, meaning that MALAK HAMMAD would be unable to intellectually comprehend the subject matter.

84. MALAK HAMMAD emailed Marcus Harley's manager and human resources and was told repeatedly, by phone only, that she should not be emailing them and that MALAK HAMMAD should never put anything regarding Marcus Harley's inappropriate matters in writing.

85. Marcus Harley told Defendant's employees to be very careful and that working with MALAK HAMMAD will be very difficult.

86. Marcus Harley made MALAK HAMMAD sound like a tyrant according to PNC BANK employee Sandra Barkalow.

87. Marcus Harley met with one of MALAK HAMMAD's employees, Jack Stukonis, for fifty-five (55) minutes in her own branch while MALAK HAMMAD was there.

88. During this meeting, Marcus Harley told Jack Stukonis that MALAK HAMMAD was a 'has been' and that her time has come and gone plus MALAK HAMMAD would be gone within a few months.

89. Marcus Harley was very mad when MALAK HAMMAD questioned him about coming to the branch and trying to intimidate her team member, Jack Stukonis.

90. MALAK HAMMAD asked Marcus Harley in the presence of Jack Stukonis if he said those exact words and Jack Stukonis replied, "Sir I didn't record you, however, yes that is what you said" that MALAK HAMMAD is a 'has been' and that her time has come and gone plus MALAK HAMMAD would be gone in a few months.

91. The situation got worse and worse and Melissa Mickle, Marketing Manager, and Julie Cart, Human Resources, did nothing about the matter.

92. In fact, Melissa Mickle and Julie Cart made MALAK HAMMAD feel like it was all in her head, which is just as bad as what Marcus Harley did.

93. On June 30, 2016, Marcus Harley announced that he was leaving on June 30, 2016, and that the new regional manager was Lisa Wilder.

94. MALAK HAMMAD helped Lisa Wilder join PNC BANK when MALAK HAMMAD took Lisa Wilder's resume to Melissa Mickle and suggested she call Lisa Wilder for an open position.

95. Melissa Mickle did call Lisa Wilder to offer the PNC BANK position and Lisa Wilder accepted it.

96. Lisa Wilder soon began acting adversely towards MALAK HAMMAD with the intention to get rid of her and make it appear as though MALAK HAMMAD was a trouble maker.

97. A previous employee of Lisa Wilder, Daena Croghan, came into MALAK HAMMAD's branch and announced that Lisa Wilder told her that she was hired to get rid of two (2) people.

98. MALAK HAMMAD asked who and Daena Croghan only told her one name which was Joe Klein.

99. Joe Klein is no longer with PNC BANK and is suing PNC BANK for discrimination.

100. MALAK HAMMAD is the other planned PNC BANK employee for firing or resignation.

101. Lisa Wilder followed Marcus Harley's discriminatory pattern and has made MALAK HAMMAD's working life situation feel as if she is hanging by a thread.

102. Lisa Wilder is making sure MALAK HAMMAD knows she must be submissive and does not hesitate to remind her.

103. Lisa Wilder will not answer MALAK HAMMAD's emails including simple requests such as asking for vacation time or such important matters as applying for a position in another location within the region.

104. It took Lisa Wilder six (6) months to respond and deny MALAK HAMMAD's requests for vacation or location change and in some instances, Lisa Wilder never replied.

105. MALAK HAMMAD has sent numerous emails to Melissa Mickle and Human Resources and same as before, there has been no resolution or response.

106. The only response was from Melissa Mickle to MALAK HAMMAD in person and she again told MALAK HAMMAD to not email her about the matter but to pick up the phone and call her.

107. There was one email where MALAK HAMMAD was very frustrated and did email Melissa Mickle who did forward the email to Human Resources and to MALAK HAMMAD's shock, she reviewed the email stating that they will call her to discuss same. However, the CC was not to Melissa Mickle, it was to Lisa Wilder and, therefore, Lisa Wilder read the entire Human Resources complaint email that MALAK HAMMAD had sent.

108. Lisa Wilder was very angry that MALAK HAMMAD emailed a complaint.

109. MALAK HAMMAD never felt as though she were worthy of a response from PNC BANK and her direct supervisors.

110. Other PNC BANK female managers were moved around to prime locations and received increases in pay time after time. This information was also reported to Human Resources and again MALAK HAMMAD received no response.

111. MALAK HAMMAD is in fear of losing her job at PNC BANK.

112. MALAK HAMMAD is only one of three others in the entire region called staff manager even though she has more experience than the rest.

113. MALAK HAMMAD's title has changed and she was demoted from branch manager III to just a branch manager.

114. MALAK HAMMAD has not considered nor has she received the normal annual incentives that she should have received.

115. MALAK HAMMAD was transferred to inferior locations within PNC BANK including moving her from an affluent area to a rural one.

116. Defendant PNC BANK wants MALAK HAMMAD to resign.

117. Defendant PNC BANK is trying to force MALAK HAMMAD to resign by subjecting her to a hostile work environment.

118. Plaintiff has hired the undersigned counsel and is obligated to pay attorney's fees and costs on a contingent fee basis.

119. Florida law provides for a contingent fee multiplier depending on the nature and difficulty of the case. Federal law provides for a multiplier in exceptional circumstances.

120. Because of the time value of money, courts should take into account the delay in payment when awarding attorneys' fees. There are two methods to account for the delay in payment: either (1) apply current hourly rates or (2) use historical hourly rates and calculate interest separately.

## COUNT I: TITLE VII SEXUAL HARRASSMENT

121. Plaintiff realleges paragraphs 1 through 120.

122. This is an action brought pursuant to 42 U.S.C.A. § 2000e-2 which states as follows:

(a) Employer practices it shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

123. In violation of Title VII, Defendant was sexually harassed.

124. Plaintiff engaged in activity protected by Title VII.

125. Defendant, Plaintiff's employer, took adverse employment action against Plaintiff.

126. There is a causal connection exists between Plaintiff's protected activity and the adverse employment action.

127. 42 U.S.C. §2000e-5(k) provides for awards of attorney's fees to MALAK HAMMAD if she prevails in this Title VII case.

### COUNT II: TITLE VII RETALIATION

128. Plaintiff realleges paragraphs 1 through 120.

129. In violation of Title VII, Defendant retaliated against Plaintiff, because she was sexually harassed and complained of it.

130. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to ... discriminate against any ... employees ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

131. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C.A. §§ 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

132. 42 U.S.C. §2000e-5(k) provides for awards of attorney's fees to MALAK HAMMAD if she prevails in this Title VII case.

### COUNT III: FLA. STAT. §760.10 DISCRIMINATION

133. Plaintiff realleges paragraphs 1 through 120.

134. Fla. Stat. §760.10 states:

(1) It is an unlawful employment practice for an employer:

(a) To ... discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(7) It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

135.  Plaintiff is: (a) a member of a protected class, (b) she was subjected to an adverse employment action, (c) her employer treated similarly situated employees outside her protected class more favorably than she was treated, and (d) she was qualified for the treatment denied her by the adverse employment action.

## COUNT IV: FLA. STAT. §760.10 RETALIATION

136.  Plaintiff realleges paragraphs 1 through 120.

137.  Fla. Stat. §760.10 states:

(1) It is an unlawful employment practice for an employer:

(a) To ... discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

Fla. Stat. §760.10(7) states:

It is an unlawful employment practice for an employer ... to discriminate against any person because that person has opposed any practice which is an unlawful employment practice

under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

138. Defendant engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant.

139. Plaintiff is: (a) a female and thus a member of a protected class, (b) she was subjected to an adverse employment action, (c) her employer treated similarly situated employees outside her protected class more favorably than she was treated, and (d) she was qualified for the treatment denied her by the adverse employment action.

## COUNT V: FLA. STAT. §448.102 RETALIATION

140. Plaintiff realleges paragraphs 1 through 120.

141. Fla. Stat. § 448.102 states:

An employer may not take any retaliatory personnel action against an employee because the employee has: (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice. (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer. (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

142. Defendant retaliated against Plaintiff, because she disclosed, or threatened to disclose, to any appropriate governmental agency an activity, policy, or practice of Defendant that is in violation of a law, rule, or regulation.

143. Plaintiff did, in writing, bring the activity, policy, or practice to the attention of a supervisor or other managerial employees of Defendant and afforded Defendant a reasonable opportunity to correct the activity, policy, or practice.

144. Plaintiff provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

145. Plaintiff objected to, or refused to participate in, an activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

146. A court may award reasonable attorney's fees, court costs, and expenses to the prevailing party in this case pursuant to Fla. Stat. §448.104.

### COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

147. Plaintiff realleges paragraphs 1 through 120.

148. Defendant engaged in extreme and outrageous conduct.

149. Defendant intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Plaintiff.

150. There exists a causal connection between the above conduct and said injury.

151. As a result of said conduct Plaintiff suffered and suffers from severe emotional distress.

152. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

153. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, bonuses, benefits and other compensation which such employment entails; out-of-pocket medical expenses; and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to her reputation, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## COUNT VII: AGE DISCRIMINATION

154. Plaintiff realleges paragraphs 1 through 120.

155. 29 U.S.C. §623(a), of the Age Discrimination in Employment Act of 1967 ("ADEA") states:

> It shall be unlawful for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

156. MALAK HAMMAD is sixty two (62) years of age.

157. Defendant discriminated against MALAK HAMMAD on the basis of her age.

158. This is glaringly apparent due to Marcus Harley referring to MALAK HAMMAD in a conversation with another bank employee as a has-been whose time has come and gone and will be gone from the bank in a few months.

159. Marcus Harley's callous insensitivity toward MALAK HAMMAD was never punished.

160. Defendant willfully violated the ADEA.

161. If a prevailing plaintiff proves a willful violation of the ADEA, she is entitled to liquidated damages pursuant to 29 U.S.C. §626(b).

162. A violation of the ADEA is considered willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.

163. Injunctive relief is also available against covered entities under the ADEA including protect an individual from further continuous antagonism by the employer.

164. Under 29 U.S.C. §626(b), the ADEA incorporates the provisions of the Fair Labor Standards Act providing for an award of attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff MALAK M. HAMMAD respectfully requests judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e et seq.; Florida law; and state common law, that the Defendant discriminated against, and retaliated against Plaintiff on the basis of her gender;

B. Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering, and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Order that Defendant take no future adverse illegal action against Defendant:

G. Order that Plaintiff be placed in the employment status including compensation and benefits that she would have received had she not been discriminated against; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful conduct.

Dated: March 20, 2017

Respectfully submitted,

/s/ David J. Volk
David J. Volk, Esq.
Florida Bar #0712949
Email: dvolk@volklawoffices.com
Volk Law Offices, P.A.
One Harbor Place
1901 S. Harbor City Blvd., Suite 700
Melbourne, Florida 32901
Telephone: (321) 726-8338
Facsimile:  (321) 726-8377

Counsel of Record for Plaintiff